## Case No. 1,715.

BOWDEN v. MORRIS et al.

[1 Hughes, 378.] [1]

Circuit Court, E. D. Virginia. July and September, 1876.

BANKS AND BANKING — NATIONAL BANKS — LIABILITY OF STOCKHOLDERS — ACTION FOR CONTRIBUTION — PROOF OF INSOLVENCY — NEW TRIAL — FAILURE OF PROOF — RELIANCE ON OBITER DICTA.

1. In the trial of a suit at law, brought by the receiver of a national bank against its stockholders, for a contribution of a hundred per cent. to meet the liabilities of the bank, under section 5151 of the Revised Statutes of

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

the United States, no evidence was presented to show that the bank was insolvent, or that it was so to the extent of a hundred per cent. of its capital stock; but the plaintiff, as to such liability, produced only a letter of the comptroller of the currency to the receiver, alleging that he had "determined that, in order to discharge the legal debts and liabilities of the bank, it would be necessary to enforce and collect the whole amount of the personal liability of the individual stockholders." Held, that the plaintiff was not entitled to recover, as no proof, established by legal evidence, had been presented at the trial, of the fact that the bank was insolvent, and insolvent to the extent of one hundred per cent. of its capital.

2. On motion afterwards for a new trial, based on the ground that the plaintiff's attorney had relied upon the language used by the learned justice of the supreme court of the United States, in his decision in the case of Kennedy v. Gibson, 8 Wall. [75 U. S.] 498, held, that this was a sufficient ground for awarding new trial.

These were actions of assumpsit [by George E. Bowden, receiver of the First National Bank of Norfolk, against W. H. Morris and others, shareholders thereof, for contribution. There was judgment for defendants, but a new trial was thereafter granted. The cases] were heard together, the facts of all being the same. Plea of non-assumpsit. By stipulation between counsel a jury is waived, and the issues of fact, as well as law, are submitted to the court.

L. L. Lewis, U. S. Atty., for plaintiff.
Richard H. Walke, W. H. C. Ellis, and Harmanson & Heath, for defendants.

HUGHES, District Judge. These suits are founded upon section 5151 of the Revised Statutes of the United States, which provides that: "The shareholders of every banking association shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares," etc.

At the trial of these causes, the only evidence presented by counsel for the plaintiff bearing on the point on which the cases turn, are: 1st, the comptroller's certificate of the organization of the First National Bank of Norfolk, with a capital stock of a hundred thousand dollars, dated the 23d of February, 1864. 2d. A list of the subscribers to the capital stock to that amount, among whom are the defendants in these suits, for the respective numbers of shares set forth in the declarations. 3d. A certificate of protest showing that the bank failed and suspended payments on the 28th of May, 1874. 4th. The comptroller's certificate, dated June 3d, 1874, of the appointment of the plaintiff as receiver of the bank, with power to act as such under the general banking law. 5th. Printed copies of the demand of the plaintiff upon the defendants for the amounts sued for, sent through the mail. 6th. The following letter from the comptroller to the receiver:

"Treasury Department, Office of Comptroller of Currency, Washington, August 13th, 1875. Sir: Having determined that in order to discharge the legal debts and liabilities of the First National Bank of Norfolk, it will be necessary to enforce and collect the whole amount of the personal liability of the individual stockholders owning stock at the date of the suspension of said bank, so far as the same can be done by legal proceedings, you are directed at once to institute such legal proceedings in the proper court, as may be necessary to enforce against each and every shareholder of said bank owning stock or any interest therein at the time said bank suspended, his or her personal liability as such stockholder, under the provisions of section 5151 of the Revised Statutes of the United States, and this order must be held to extend to all cases save those where, because of bankruptcy or apparent insolvency, such legal proceedings would be of no avail. Very respectfully, John Jay Knox, Comptroller of the Currency.

"George E. Bowden, Esq., Receiver First National Bank, Norfolk, Va."

Except this letter, and the certificate of the protest of a single ten dollar note of the bank, made on the 28th of May, 1873, there is no evidence in the cause tending to show that the bank is liable for contracts, debts, or engagements of any sort, or to any amount beyond its assets.

In order to establish the liability of these defendants, it must appear from the evidence —1st, that the receiver is authorized to bring these suits; and 2d, that the bank owes "contracts, debts, and engagements" beyond its assets, requiring the contributions sued for from these shareholders. Of the authority of the receiver to sue, and to sue for the amounts for which these suits are brought, the certificate and the letter of the comptroller are sufficient proof. The supreme court of the United States has so decided in the case of Kennedy v. Gibson, 8 Wall. [75 U. S.] 498. At page 505, Justice Swayne says, "It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action on his part is indispensable, whenever the personal liability of the stockholder is sought to be enforced, and must precede the institution of suit by the receiver. The fact must be distinctly averred in all such cases, and if

put in issue must be proved." See, also, Cadle v. Baker, 20 Wall. [87 U. S.] 650, to the same effect. Of course, this decision is the law of the present case; and accordingly I am authorized to hold that the comptroller's certificate of June 3d, 1874, is sufficient proof that the plaintiff is the receiver of the bank, and that his letter, dated 13th of August, 1875, is conclusive proof that the receiver had authority to sue in these cases. No stockholder can dispute that authority, and none of these defendants do dispute it. Whether to sue, when to sue, and for how much to sue, are matters for the exclusive determination of the comptroller, who directs the receivers according to his determination, and whose determination can be controverted or resisted by no stockholder of the insolvent bank.

But the United States attorney, who is counsel for the plaintiff, assuming that the comptroller's letter of August 13th, 1875, was proof, not only of the receiver's authority to sue, but of the fact that the bank owed "contracts, debts, and engagements" a hundred per cent. over and above its assets, and that the defendants were liable for such contracts, debts, and engagements to the amount of a hundred per cent. on the par value of their shares, presented no evidence whatever (unless this letter of the comptroller, not sworn to, be deemed evidence) of the fact that the bank owed debts of any sort, to any amount, for which the shareholders were liable, under section 5151 of the Revised Statutes, insisting that the decision in Kennedy v. Gibson made the comptroller's letter of August 13th, 1875, conclusive proof of that fact, which the defendant stockholders could not controvert.

I cannot possibly assent to such a construction of that decision. That case turned wholly and exclusively upon the authority of persons and officers connected with the subject-matter, and not at all upon any question of evidence affecting the merits of the controversy. The principal question in the case was, whether the receiver could sue before being directed to do so by the comptroller, and it was decided that he could not, and that he should allege in his bill or declaration that instructions to sue had been given. Another point decided was, that creditors of the insolvent bank cannot sue its shareholders for contribution under section 5151, and that the receiver alone can sue. The remaining point decided was, that although it was made by law the duty of the United States attorney to bring such suits, yet the receiver, by approval of the treasury department, might retain other counsel to bring and conduct them. No question but one of authority to sue was raised in the case, and, of course, no other point was decided. What value the comptroller's instruction to the receiver possessed as evidence of the liability of the shareholders to contribute to the debts of the bank was not a point in

the case, and, of course, was not decided. It is true that some of the expressions of the learned justice who delivered the opinion of the court seem to hold that the comptroller's instructions to the receiver to sue, and for how much to sue, are sufficient proof at the trial of the insolvency, or of the extent of the insolvency, of the bank over and above its assets, but even if those expressions were intended to bear such a construction (which I do not think they were), they are but obiter dicta, and, as such, can have no authority in the decision of the questions necessary to be decided in these causes. Moreover, this dictum was predicated only of suits in equity brought by receivers of national banks. A court of equity may very well call in, from the stockholders of such a bank, even a greater contribution than might be actually necessary to meet its engagements, for, under the elastic practice in chancery, any surplus could afterwards be readily refunded to the stockholders. But the judgment of a court of law is absolute, and the dictum under consideration was never intended to be applied in actions at law brought by these receivers.

It is a constitutional provision that no person shall be deprived of his property except by due process of law. Except in cases where property is taxed, or otherwise taken for public purposes, by due process of law is meant by suit in a court of justice, and upon judgment according to the law and evidence. In the present cases suit is duly brought, and the court is bound to render its judgment according to the law and the evidence. The law makes these defendants liable only for the debts of this bank which it may owe beyond the value of its assets, and there must be proof in these cases that its debts are a hundred per cent. more than its assets can meet. How is such a fact to be proved? Clearly it can only be proved by legal evidence, evidence taken under the usual tests, for instance, of the oath, and of cross-examination. Surely the "determination" of the comptroller of the currency, that the stockholders of this bank are liable to the extent of a hundred per cent. above its assets, however correct it may be in fact, is not legal evidence of the fact such as a court of justice must accept as conclusive and incontrovertible. Surely the supreme court of the United States could not have intended, in Kennedy v. Gibson, to hold that such "determination" is not only evidence, but conclusive proof, which the "stockholders cannot controvert." Congress has sometimes gone as far as to enact that the transcript of a public officer's accounts, certified to be taken from the books of the treasury department, shall be prima facie evidence of their correctness as against that officer, but it has never gone so far as to declare such evidence to be conclusive and incontrovertible. So, the law of Virginia makes the signature of the maker of a promissory note, alleged in the declaration of the

plaintiff to have been signed by the maker, prima facie genuine, but it nowhere declares that the genuineness of such a signature shall not be questioned or controverted. There is no law of congress making the "determination" of the comptroller even evidence of the insolvency of a bank or of the extent of it, much less prima facie or conclusive evidence.

If this letter of the comptroller to the receiver were conclusive evidence against the defendants in these causes, not only as to the receiver's authority to sue, as he has done, but also as to the liability of these defendants for "contracts, debts, and engagements" of the bank to the extent of 100 per cent. on their shares, why resort to a court of law at all? Surely a court of justice is something more than a mere machine for obediently executing the foregone determinations of some other tribunal; something more than the registering office of the judgment of another branch of the government. Surely the court has higher functions to perform in cases tried before it, than the ministerial duty of rendering such judgment as may be prescribed to it by subordinate officers of an executive bureau. If the mandate of the chief officer of a bureau at Washington were binding as to those matters submitted to a court in the trial of a cause which go to the very merits of the demand, why try it elsewhere than at the bureau itself?

It may be ever so notorious that this bank is insolvent to the extent of a hundred per cent. beyond its assets, and that the payment of its debts may require contributions from its stockholders to full one hundred per cent. on their stock; but courts and juries must be deaf and blind to all facts except those which are submitted to them in evidence. They are sworn to try and decide according to the evidence submitted at the trial; and facts of the widest notoriety, if not so submitted, not only cannot be considered but must be studiously excluded from consideration.

The comptroller's letter of August 13th, 1875, is conclusive no farther than as to the receiver's authority to sue, and as to how much he shall sue for. It proves nothing at all as to the extent of the insolvency of the bank, and as to the liability of the defendants on their stock. This liability must be shown affirmatively by some sort of positive evidence; it cannot be inferred from hearsay or from the mere fact that the comptroller has ordered suit for the par value of the shares of the defendants. As nothing but the comptroller's letter was offered in evidence, it is impossible for me to hold that the liability of the defendants has been proved. As there was no evidence whatever presented at the trial, save this letter of the comptroller (itself not having the dignity of an affidavit) that this bank was bound for any contracts, debts, or engagements beyond what its assets could meet, no case is proved

against the defendants. The court accordingly decides that upon the evidence submitted at the trial they are not liable as set forth in the declaration; and finds for the defendants in each of these cases.

#### [Motion for New Trial.]

These cases were further heard on the 2d September, 1876, on a motion of the United States attorney for a new trial. The ground of the motion was, that as counsel for the plaintiff, he had relied confidently upon the strong language of Justice Swayne, in the supreme court of the United States, used in delivering its decision in the case of Kennedy v. Gibson, 8 Wall. [75 U. S.] 505, to the effect that the "determination" of the comptroller that suits should be brought against the stockholders of an insolvent national bank for a percentage on their subscriptions was conclusive against the stockholders as to their liability, and the extent of it, and incontrovertible; and therefore it was that he had not submitted evidence which was abundantly at his command showing that the First National Bank was in fact insolvent to the full amount of its capital stock; thinking it unnecessary to do so in view of the decision of the supreme court referred to.

HUGHES, District Judge. This motion is of course addressed to the discretion of the court; and its success must depend upon the two considerations, 1st, whether substantial justice was done at the former trial; and, 2d, if not, whether that was the result of inexcusable negligence or other fault in the plaintiff or his counsel.

I suppose that it will be conceded that substantial justice was not done at the former trial. The allegation of the district attorney is, that he had full proof at command that the First National Bank of Norfolk is insolvent to the extent of a hundred per cent. of its capital stock beyond its assets. If so, and the law making its stockholders liable severally for that amount on their stock, substantial justice was not done in a trial in which that liability was not established by proof which was readily available.

The only remaining question, therefore, is, whether the district attorney's excuse for not producing evidence which he had at his command is admissible and sufficient; which is, that he relied upon the language used by the supreme court in Kennedy v. Gibson, 8 Wall. [75 U. S.] 505, as dispensing with the necessity of proof. The language referred to, used by Justice Swayne, who delivered the unanimous opinion of the court, was this: "It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or part, and if only a part, how much shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders

cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action on his part is indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of suit by the receiver."

I have already shown that this language, so far as the question of proof of the liability of stockholders as distinguished from the authority of the receiver to sue was concerned, was obiter dictum. But it was certainly calculated to mislead. If used by the judge of any inferior court, there would have been less excuse for relying upon it; but, used as it was by a justice of the supreme court of the United States, in pronouncing the unanimous opinion of that august bench, I feel bound to concede the validity of the excuse of the district attorney. See Starkweather v. Loomis, 2 Vt. 573. I will therefore allow a new trial, and continue there these causes to the next term of the court.

NOTE [from original report]. At the second trial of the cases the proper proofs were submitted and verdict and judgment were for the plaintiff in all the cases.

[NOTE. For decisions in other actions by the same plaintiff to enforce personal liability of the shareholders, see Cases Nos. 1,714 and 1,716.]

————

## Case No. 1,716.

### BOWDEN v. SANTOS et al.

### SAME v. TURNER et al.

[1 Hughes, 158;[1] 1 Thomp. Nat. Bank. Cas. 271.]

Circuit Court, E. D. Virginia. May Term, 1877.

BANKS AND BANKING — NATIONAL BANKS — INSOLVENCY — FRAUDULENT TRANSFER OF STOCK — TRANSFERRER'S LIABILITY.

The transfer of shares of the capital stock of a national bank, made with intent to exonerate the owner and transferror from liability as a stockholder to creditors, is void as against creditors of the bank.

[See Davis v. Stevens, Case No. 3,653.]

In equity. These two cases are so nearly alike that it is only necessary to consider one of them, which will be the one first named. This was a bill in chancery filed by the plaintiff [George L. Bowden], as receiver of the First National Bank of Norfolk, to enforce the personal liability of the defendant, [C. A.] Santos, as the owner of thirty-nine shares of the capital stock of the said bank. On the 26th day of May, 1874, the bank suspended, and on the 3d day of June of that year the plaintiff was appointed its receiver by the comptroller of the currency, in pursuance of the provisions of the national banking act. [Decree for plaintiff.]

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

L. L. Lewis, for plaintiff.

Baker & Walke and W. H. C. Ellis, for defendants.

HUGHES, District Judge. The bill in this case is filed to set aside certain transfers of the shares of the capital stock of the First National Bank of Norfolk (of which the plaintiff is receiver) made by the defendant, Santos, to the defendants, Lamb and Williams, a few days before the suspension of the bank, in May, 1874. It also prays that Santos may be decreed to pay to the plaintiff the par value of the shares thus transferred.

As to the facts, the bank suspended on the 26th day of May, 1874, and is utterly insolvent. The defendants, Santos and Lamb, at the time of its suspension were directors, and for a long time prior thereto had been officers of the bank. The defendant, Lamb, was president up to a short time before its suspension. For some time before that event the bank had been in a critical condition, and it had been evident to the officers that its "suspension was a mere question of time." The defendant, Santos, aware of the condition of the bank (it was the subject of frequent discussion by the directors), and anxious to relieve himself of liability as the holder of the stock in question, transferred in due form, on the books of the bank to Lamb, nineteen of his shares on the 16th May, and his remaining twenty shares to Williams on the 21st day of May, 1874. At the time of these transfers both Lamb and Williams were insolvent, and have ever since been unable to respond to the demands of the creditors on account of these shares. At the time of these transfers there were already standing in the name of Lamb on the books of the bank over 200 shares of its capital stock. The receiver has been unable to make anything out of either Lamb or Williams on account of their liabilities to the bank. On the other hand, Santos, at the time of these transfers, was, and is, a man of high standing and credit in business circles, and of large means.

In his answer it is averred by Santos that the transfer of the shares was a bona fide transaction, and for valuable consideration; but the allegation in the bill that Williams was insolvent, and unable to respond to the demands of the creditors on account of these shares, is not denied. It is abundantly established by the evidence in the case that the transfers were made to exonerate the defendant, Santos, from his liability as a stockholder. In his answer, Santos declares that he was never the purchaser or owner of the nineteen shares transferred to Lamb. And yet the testimony shows that he executed his note (which he has since been requested to pay) for these shares, and that they stood in his name on the books of the bank for a considerable number of months before he transferred them to Lamb.

The defence set up that these shares were formerly bought in by Lamb for account of the bank, and that it was agreed between them that if Lamb, acting for the bank, would buy the shares for the bank, he might place them in Santos's name, provided he would indemnify him, i. e., take a transfer of the shares when it should be desired by Santos, is invalid. Under the provisions of the national currency act (Rev. St. § 5201) a national bank is prohibited from purchasing or holding its own shares. What is forbidden to be done directly the law does not allow to be done indirectly. Consequently the promise on the part of Lamb to take the shares when requested, if it could be sustained on any ground under the circumstances of this case, certainly cannot be sustained on the ground upon which it is placed in the answer. It is founded upon an illegal agreement, and the case comes strictly within the ruling of the judges in the case of Ex parte Walker, 39 Eng. Law & Eq. 579. Plain as these facts are, they are no plainer than the law of the case. Indeed, there is no serious defence set up against the prayers of the bill, except the technical one that a bill does not lie, no discovery being sought, and there being adequate remedy at law. Counsel for defence rely, as to the doctrine that there is no such thing as fraud per se, on Davis v. Turner, 4 Rand. [4 Grat.] 422, and as to jurisdiction of equity where no discovery is sought, on Home Ins. Co. v. Stanchfield [Case No. 6,660], and Meze v. Mayse, 6 Rand. [Va.] 658. But this is a case of trust, and equity has jurisdiction in all matters of trust. That the capital stock of an incorporated company is a trust fund for the payment of the debts, and is required by courts of equity to be honestly and faithfully guarded and handled, is settled by very many decisions of the courts of this country. I refer only to Wood v. Dummer [Case No. 17,944]; Upton v. Tribilcock, 1 Otto [91 U. S.] 47; Sanger v. Upton, Id. 60; Webster v. Upton, Id. 71; Nathan v. Whitlock, 9 Paige, 159; 6 Paige, 337. See, also, 2 Story, Eq. Jur. § 1252. Any contract, especially among the officers of an incorporated company, involving the withdrawal of any portion of the capital stock from the reach of creditors, will not be tolerated by a court of equity. 6 Paige, 337; Ex parte Bennett, 27 Eng. Law & Eq. 572; Ex parte Walker, 39 Eng. Law & Eq. 576, etc. In the case of Nathan v. Whitlock, 9 Paige, 159, the defendant, Whitlock, who had been a director of the company, transferred his stock to Brown, the president of the company, the latter giving his note, in place of Whitlock's, for the stock transferred. The company afterwards failing, and Brown being insolvent, the receiver was allowed to recover of Whitlock the amount of his shares transferred to Brown. The court held the transfer of the stock to be a fraud upon the rights of the creditors, and ineffectual to relieve Whitlock of his liability,

and that Whitlock, having been a director of the company, must be presumed to have known its situation, and had no right to shift from himself to an irresponsible person the liabilities of a holder of the capital stock transferred. In Upton v. Tribilcock, 1 Otto [91 U. S.] 47, the supreme court says: "The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund, of which the directors are the trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one, and cannot be disregarded. Its violation will not be undertaken by any just-minded man, and will not be permitted by the courts." Again, in the case of Sanger v. Upton, 1 Otto [91 U. S.] 60, the law is laid down as follows: "The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands, until such demands are satisfied."

Again, in the case of Webster v. Upton, 1 Otto [91 U. S.], is it said (page 71): "The whole subscribed capital stock of a corporation is a trust fund for the payment of creditors when the corporation becomes insolvent. * * * The stock cannot be released, i. e., the liabilities of the stockholders cannot be discharged, to the injury of creditors, without payment."

[NOTE. For decisions in other actions by the same plaintiff to enforce the personal liability of the shareholders, see Cases Nos. 1,714 and 1,715.]